Nathaniel L. Dilger (State Bar No. 196203)
Email: ndilger@onellp.com
Peter Afrasiabi (State Bar. No. 193336)
Email: pafrasiabi@onellp.com
Joseph Liu (State Bar No. 216227)
Email: jliu@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:   (949) 258-5081

*Attorneys for Plaintiff,*
*MEMS Innovations, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MEMS INNOVATIONS, LLC, a Texas limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>TDK CORPORATION, a Japanese corporation; TDK CORPORATION OF AMERICA, a California corporation; INVENSENSE, INC., a Delaware corporation,<br><br>                    Defendants. | Case No. 8:25-cv-02251<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff MEMS Innovations, LLC ("MEMS Innovations" or "Plaintiff") hereby submits its Complaint for patent infringement against Defendants TDK Corporation, TDK Corporation of America, and InvenSense, Inc. (collectively "TDK" or "Defendants") and states as follows:

## I.    PARTIES

1.    MEMS Innovations is a limited liability company organized under the laws of the state of Texas with its principal place of business at 26522 La Alameda Ave., Suite 360, Mission Viejo, CA 92691.

2.    On information and belief, Defendant TDK Corporation is a corporation organized under the laws of Japan, with its headquarters at 2-5-1 Nihonbashi, Chuo-ku, Tokyo, 103-6128, Japan. On information and belief, TDK Corporation provides sensor products including MEMS sensors in different parts of the world including the United States.[1]

3.    On information and belief, Defendant TDK Corporation of America is a corporation organized under the laws of California, with its headquarters at 475 Half Day Road, Suite 300, Lincolnshire, IL 60069 and with offices within this judicial district at 11070 Valley View Street, Cypress, CA 90630.[2] TDK Corporation of America may be served via its registered agent, CSC Lawyers, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833. On information and belief, TDK Corporation of America is involved in sale of electronic materials and components and power supplies.[3]

---

[1] https://www.tdk.com/en/about_tdk/tdk_at_a_glance/index.html (last visited Aug. 18, 2025).

[2] https://www.us.tdk.com/contact/tdk-americas-contact.php (last visited Aug. 18, 2025); *see also* https://www.tdk.com/en/worldwide/index.html?country-area=input-USA (last visited Aug. 18, 2025).

[3] https://www.us.tdk.com/contact/tdk-americas-contact.php (last visited Aug. 18, 2025).

**COMPLAINT FOR PATENT INFRINGEMENT**

4.      On information and belief, Defendant InvenSense, Inc. is a corporation organized under the laws of Delaware, with offices located at 1745 Technology Drive, San Jose, CA 95110. On information and belief, as of May of 2017, "InvenSense became part of the MEMS Sensors Business Group within the newly formed Sensor Systems Business Company of TDK Corporation."[4] On information and belief, InvenSense, Inc. is involved with development and production of piezoelectric microspeakers, transducers and sensors that are incorporated into ultrasonic sensors that can be used in a variety of applications including, but not limited to, social distancing, robotics, appliances, AR/VR gaming, presence detection, smart locks, smart home & IoT, and drones.[5]

## II.      JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

6.      On information and belief, Defendants have employees in the state of California and in this judicial district. Defendants have solicited business in the State of California, transacted business within the State of California and attempted to derive financial benefit from residents of the State of California, including benefits directly related to the instant patent infringement cause of action set forth herein.

7.      This Court has personal jurisdiction over Defendants at least because Defendants conduct business and have committed acts of patent infringement and/or have induced and/or contributed to acts of patent infringement by others in this judicial district, the State of California, and elsewhere in the United States. As

---

[4] https://invensense.tdk.com/company-profile/#:~:text=In%20May%20of%202017%2C%20InvenSense,Business%20Company%20of%20TDK%20Corporation (last visited Aug. 18, 2025).

[5] https://invensense.tdk.com/smartsonic/ (last visited Aug. 18, 2025).

**COMPLAINT FOR PATENT INFRINGEMENT**

described in further detail below, on information and belief, Defendants make, use, offer for sale, sell, and/or import various piezoelectric microspeakers, transducers, and sensor chips or products containing piezoelectric microspeakers, transducers and sensors that directly and indirectly infringe one or more of MEMS Innovations' patents. On information and belief, these Infringing Products (the '505 Patent Infringing Products (defined below), and the '697 Patent Infringing Products (defined below) are collectively referred to herein as the "Infringing Products") have been offered for sale, sold, used, and imported in the United States, within the State of California and within this judicial district.

8.    Defendants are subject to personal jurisdiction under the provisions of the California Long-Arm Statute, Cal. Code of Civ. Pro. § 410.10 *et seq.*, by virtue of the fact that, upon information and belief, Defendants have availed themselves of the privilege of conducting and soliciting business within this State, including engaging in at least some of the infringing activities in this State, as well as by others acting as Defendants' agents and/or representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution, and the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

9.    On information and belief, Defendants have a regular and established place of business in this judicial district and regularly transact and do business within this district. On further information and belief, Defendants have purposefully directed activities at citizens of this State including those located within this judicial district. On information and belief, Defendants derive substantial revenue from the goods and services they provide to individuals in the State of California and in this judicial district.

10.    For example, Defendants have multiple subsidiary and related companies operating and/or based in this District or in the State of California. Examples include TDK-Lambda Americas Inc., which is on information and belief a

corporation organized under the laws of New Jersey involved in sale of electronic components and energy application products, with San Diego offices located at 1669 Brandywine Avenue, Suite A, Chula Vista, CA 91911. (*See* fn. 4).  Other examples include Faraday Semi, Inc., which is on information and belief a corporation organized under the laws of California involved in sale of electronic components and DC-DC converters, with Irvine offices located at 11 Cushing, Suite 200, Irvine, CA 92618..[6]  Another example is SoftEye, Inc., which is on information and belief a corporation organized under the laws of Delaware involved in the development and sale of chips and electronic components to be used in AI-driven eyewear, with San Diego offices located at 11403 W. Bernardo Court, Suite 201 San Diego, CA 92127.[7]  Another example is Magnecomp Corporation, which on information and belief is a corporation organized under the laws of California involved in sale of electronic components and magnetic application products, with Murrieta offices located at 29970 Technology Drive, Suite 216C, Murrieta, CA 92563.. (*See* fn. 4)

11.    This court also has personal jurisdiction over Defendants because, acting in consort, Defendants purposefully and voluntarily placed the Infringing Products into the stream of commerce, with the expectation that they will be purchased and used by customers in the United States, in the State of California and in this judicial district. On information and belief, customers in the State of California and in this judicial district have purchased and used and continue to purchase and use the Infringing Products. Accordingly, Defendants' conduct and connections with the State of California are such that they should reasonably have anticipated being brought into court here.

---

[6] https://product.tdk.com/en/products/power/switching-power/micro-pol/index.html (last visited Aug. 18, 2025).

[7] https://www.softeye.ai/ (last visited Aug. 18, 2025).

**COMPLAINT FOR PATENT INFRINGEMENT**

12.     Venue is proper in this District as to TDK Corporation pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, TDK Corporation is subject to this Court's personal jurisdiction and because, being an alien corporation, TDK Corporation may be sued in any district that has personal jurisdiction.

13.     Venue is also proper in this District as to TDK Corporation of America pursuant to 28 U.S.C. § 1400(b) at least because it has committed acts of infringement in this District and maintains a regular and established places of business in Orange, Riverside, and San Diego Counties.[8]

14.     Venue is also proper in this District also as InvenSense pursuant to 28 U.S.C. § 1400(b) at least because (a) it has committed acts of infringement in this District, (b) since at least May of 2017, InvenSense operates as a part of Defendant TDK Corporation,"[9] against whom venue is likewise proper, and (c) InvenSense maintains a regular and established places of business in this District comprising at least a sales representative located at 18002 Cowan Irvine, CA 92614.

15.     Defendants are properly joined under 35 U.S.C. § 299(a)(1) because, as set forth in greater detail below, on information and belief, Defendants commonly and/or jointly make, use, sell, offer to sell, and/or import Infringing Products, such that at least one right to relief is asserted against Defendants jointly, severally, and in the alternative with respect to the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, selling, offering to sell, and/or importing into the United States the same Infringing Products, as set forth in

---

[8] https://www.us.tdk.com/contact/sales.php?lnk_state=CA&lnk_country=USA&slsSearch=Submit (last visited Aug. 18, 2025).

[9] https://invensense.tdk.com/company-profile/#:~:text=In%20May%20of%202017%2C%20InvenSense,Business%20Company%20of%20TDK%20Corporation (last visited Aug. 18, 2025).

greater detail herein.

16.    Defendants are properly joined under 35 U.S.C. § 299(a)(2) because, as set forth in greater detail below, on information and belief, Defendants make, use, sell, offer to sell in, and/or import into the United States the same or similar Infringing Products, such that questions of fact that are common to all Defendants will arise in this action.

### III.    BACKGROUND

17.    Microelectromechanical systems ("MEMS") are small scale, electrically actuated, mechanical systems that are more recently manufactured by using similar methods to those used in the semiconductor industry, including patterning and photolithography. Acoustic MEMS may be used to produce and sense sound waves at various frequencies.

18.    According to Defendants, the Infringing Products, such as ultrasonic sensors, enable "flexible industrial design options for a broad range of use-case scenarios, including range-finding, presence and proximity sensing, object-detection and avoidance, and position-tracking."[10] Uses for ultrasonic sensors include, for example, home automation, personal electronics, obstacle avoidance, robotics and drones, remote presence sensing, augmented reality, virtual reality, gaming, gesture control, liquid level sensing, and shelf inventory monitoring.[11]

19.    On October 12, 2010, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 7,812,505 ("the '505 Patent"), titled "Piezoelectric Microspeaker Using Microelectromechanical Systems and Method of Manufacturing the Same." The '505 Patent is valid and enforceable.

20.    On February 14, 2012, the USPTO duly and legally issued United States Patent No. 8,114,697 ("the '697 Patent"), titled "Piezoelectric Microphone,

---

[10] https://invensense.tdk.com/products/ch201/ (last visited Aug. 18, 2025).

[11] *Id.*

Speaker, Microphone-Speaker Integrated Device and Manufacturing Method Thereof." The '697 Patent is valid and enforceable.

21.    The '505 and '697 Patents (collectively, the "Asserted Patents") were originally assigned to and are owned by the Electronics and Telecommunications Research Institute ("ETRI"), which is Korea's national leader in the research and development of Information & Communication Technologies.[12] Since its inception in 1976, ETRI has developed countless new technologies, including inventions related to DRAM computer memory, CDMA and 4G LTE cellular phone communications, and LCD displays, as well as manufacturing microphones and speakers through a microelectromechanical system (MEMS) process, the technology at issue in this case.[13] ETRI employs over two thousand research and technical staff, of whom over 90% hold a post-graduate degree and 60% have earned a doctoral degree in their technological field.[14] Since its founding, ETRI has applied for and been granted over 28,000 patents, has contributed about 8,000 proposals that have been adopted by international and domestic standards organizations, and has published about 1,500 articles in peer-reviewed technology publications.[15]

22.    MEMS Innovations is the exclusive licensee of the Asserted Patents with the sole and exclusive right to prosecute this action, to enforce the Asserted Patents against infringers, to collect damages for past, present and future infringement of the Asserted Patents, and to seek injunctive relief as appropriate

---

[12] https://www.etri.re.kr/engcon/sub1/sub1_02.etri (last visited Aug. 18, 2025).

[13] *Id.*

[14] http://www.koreaittimes.com/news/articleView.html?idxno=1654 (last visited Aug. 18, 2025).

[15] https://markets.businessinsider.com/news/stocks/electronics-and-telecommunications-research-institute-etri-joins-hevc-advance-1002307006 (last visited Aug. 18, 2025); http://www.koreaittimes.com/news/articleView.html?idxno=1654 (last visited Aug. 18, 2025).

**COMPLAINT FOR PATENT INFRINGEMENT**

under the law. Defendants are not licensed to the Asserted Patents, either expressly or implicitly, nor do Defendants enjoy the benefit from any other rights in or to the Asserted Patent whatsoever. Accordingly, Defendants' infringement, as described below, has injured, and continues to injure MEMS Innovations.

23.    On or about November 8, 2022, Plaintiff sued defendants TDK Corporation of America, and TDK Corporation in the Eastern District of Texas alleging infringement of the Asserted Patents.  Defendant InvenSense was involved in the lawsuit of November 8, 2022 and was on notice of infringement of the '505 and '697 Patents at latest as of the filing of that lawsuit.  InvenSense was also one of the parties that, along with TDK Corporation and TDK Corporation of America, signed an agreement with MIL on April 27, 2023 to pursue an out-of-court resolution of the infringement distpute with respect to the law suit of November 8, 2022.  That lawsuit was thereafter dismissed on or about May 1, 2023, without prejudice based on the April 27, 2023 agreement of the parties so as to allow the parties to discuss an out-of-court resolution of the dispute.  Those discussions have since proved unsuccessful, necessitating the filing of this complaint.

## IV.    COUNT I: INFRINGEMENT OF '505 PATENT

24.    MEMS Innovations incorporates each of the allegations of paragraphs 1-23 above.

25.    Defendants have directly infringed and continue to directly infringe the '505 Patent by, for example, making, using, offering to sell, selling, and/or importing into the United States, without authority, products that practice one or more claims of the '505 Patent.

26.    Defendants are not licensed or otherwise authorized to make, use, offer for sale, sell or import any products that embody the inventions of the '505 Patent in the United States.

27.    Defendants have and continue to directly infringe one or more claims of the '505 Patent, including, for example, claim 1 of the '505 Patent, either literally

1  or under the doctrine of equivalents, by making, using, offering to sell, selling,

2  and/or importing into the United States infringing piezoelectric microspeakers and

3  sensors without authority and in violation of 35 U.S.C. § 271.

4      28.    With respect to the '505 Patent, Defendants' infringing products

5  include, for example, the Chirp CH101 Ultrasonic Time-of-Flight (ToF) Sensor, the

6  CH201 Ultrasonic ToF Sensor, the ICU-10201 High-Performance Ultrasonic

7  Time-of-Flight Sensor, the ICU-20201 High-Performance Ultra-Compact Ultrasonic

8  Time-of-Flight Sensor, the ICU-30201 High-Performance Ultrasonic Time-of-Flight

9  Sensor, and the Ultrasonic Sensor Module USSM1.0 PLUS-FS ("TDK Ultrasonic

10  Sensors"), and any other TDK ultrasonic sensors used in various applications that

11  may or may not have TDK part numbers but are made by TDK with a similar

12  structure as well as any TDK microspeakers which have similar structure and which

13  may or may not be ultrasonic sensors, any TDK products that incorporate and/or

14  include such TDK ultrasonic sensors and such TDK microspeakers (collectively, the

15  "'505 Patent Infringing Products").

16      29.    For example, the TDK Ultrasonic Sensors infringe representative claim

17  1 of the '505 Patent. On information and belief, the remaining '505 Patent

18  Infringing Products infringe representative claim 1 of the '505 Patent in the same

19  manner.

20      30.    Claim 1 of the '505 Patent claims a piezoelectric microspeaker using

21  microelectromechanical systems (MEMS), comprising: a piezoelectric layer

22  disposed on an elastic thin layer; and a resonance change unit patterned on one of a

23  bottom surface of the elastic thin layer and a top surface of the piezoelectric layer.

24      31.    The TDK Ultrasonic Sensors include a piezoelectric layer disposed on

25  an elastic thin layer. A top view and exemplary scanning electron microscope

26  (SCM) cross section of the CH101 sensor is shown below in Figure 1. Figure 2

27  (below) illustrates an exemplary cross-section of a portion of the CH101 sensor,

28  with the piezoelectric layer (107) highlighted in orange and disposed on the

1 | polysilicon membrane elastic thin layer.



***Figure 1***



***Figure 2***

32. The TDK Ultrasonic Sensors also include a resonance change unit patterned on one of a bottom surface of the elastic thin layer (103) and a top surface

**COMPLAINT FOR PATENT INFRINGEMENT**

of the piezoelectric layer. For example, as shown in the exemplary cross sections of a CH101 sensor in Figure 2 above and Figure 3 below, the "setback" (resonance change unit) is patterned on the bottom surface of the polysilicon membrane (elastic thin layer). The shape and dimensions of the patterned setback define the resonance frequency of the piezoelectric microspeaker of the TDK Ultrasonic Sensors.



**Figure 3**

33.    Defendants also have and continue to indirectly infringe one or more claims of the '505 Patent by knowingly and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States infringing products that incorporate and/or use the '505 Patent Infringing Products. Defendants induce direct infringement of the '505 Patent by customers, importers, sellers, resellers, and/or end users of the '505 Patent Infringing Products. On information and belief, the direct infringers include Defendants' customers that incorporate the Infringing Products into a product that they make, use, offer for sale, sell, or import into the United States. On information and belief, the direct infringers incorporate the Infringing Products into one or more products in the fields of augmented

reality/virtual reality hardware, smart home appliances, IoT devices, mobile devices (for example, fingerprint scanners, proximity detection, and ranging measurements) and wearables, automobiles (for example, detection of presence of passengers, and collision detection), liquid level detection in industrial and consumer applications, medical and health applications, object detection (for example, hand detection for faucet control), robotics and drones, and in construction equipment.

34.     Defendants TDK Corporation of America and TDK Corporation had actual knowledge of the '505 Patent and their infringement thereof since at least as early as November 7, 2022, when they were provided written notice of that patent and their infringement thereof.  Additionally, at the very least Defendants had actual knowledge of the '505 Patent and their infringement of the same as of the date of a prior Complaint filed on November 8, 2022, *MEMS Innovations, LLC v. TDK Corporation et al,* Case No. 2:22-cv-00434-JRG.  Accordingly, at least as of November 7, 2022, Defendants TDK Corporation of America and TDK Corporation were on notice, knew and/or should have known that their actions as alleged herein induced direct infringement of that patent by third parties. Defendants TDK Corporation of America and TDK Corporation are therefore liable since at least as early as November 7, 2022 for induced infringement by third party direct infringers and should have known by at least that date that their actions as alleged herein would induce actual infringement.

35.     Moreover, Defendant InvenSense, Inc. had actual knowledge of the '505 Patent and their infringement thereof prior to the dismissal without prejudice of the above lawsuit on or about May 1, 2023, prior to which Defendant InvenSense were provided written notice of that patent and their infringement thereof. Accordingly, prior to May 1, 2023, Defendant InvenSense, Inc. was on notice, knew and/or should have known that their actions as alleged herein induced direct infringement of that patent by third parties. Defendant InvenSense, Inc. is therefore liable since prior to May 1, 2023 for induced infringement by third party direct

infringers and should have known by at least that date that their actions as alleged herein would induce actual infringement.

36. Defendants induced infringement by others with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '505 Patent, but while at best, remaining willfully blind to the infringement.

37. On information and belief, Defendants advertise the '505 Patent Infringing Products, publish specifications and promotional literature encouraging customers to implement and incorporate the '505 Patent Infringing Products into end user products, create and/or distribute user manuals for the '505 Patent Infringing Products that provide instructions and/or encourage infringing use, and offer support and/or technical assistances to their customers that provide instructions on and/or encourage infringing use.

38. Defendants encourage and facilitate their customers to infringe the '505 Patent by promoting the '505 Patent Infringing Products, for example, stating on their website that "[t]he sensor handles a variety of ultrasonic signal-processing functions and algorithms, enabling customers flexible industrial design options for a broad range of use-case scenarios."[16]

39. Defendants' customers that incorporate the '505 Patent Infringing Products into other products (*e.g.*, smartphones, vehicles, etc.) as well as the end users of those products, each directly infringe the Asserted Patents pursuant to Defendants' instructions and advertisements.

40. Defendants also have contributorily infringed the '505 Patent by selling or offering to sell the '505 Patent Infringing Products to Defendants' customers and other end users, who then incorporate the '505 Patent Infringing Products into other

---

[16] https://invensense.tdk.com/products/ch101/;
https://invensense.tdk.com/products/ch201/ (last visited Aug. 18, 2025).

products (*e.g.*, smartphones, vehicles, etc.) in a manner that directly infringes one or more claims of the '505 Patent. Defendants sold or offered to sell the '505 Patent Infringing Products to Defendants' customers and other end users despite knowing (a) that the '505 Patent Infringing Products are material to the inventions described and claimed in the '505 Patent, (b) that the '505 Patent Infringing Products have no substantial non-infringing use, and (c) that the '505 Patent Infringing Products are specially made for and in fact do infringe one or more claims of the '505 Patent.

41.     Defendants' direct and indirect infringement of the '505 Patent is willful.

42.     Defendants engaged in this conduct with knowledge of the '505 Patent's existence and with knowledge that the Infringing Products infringed it, and that their customers' use of the Infringing Products constituted direct infringement.

43.     Defendants' actions in this case warrant the imposition of enhanced damages under 35 U.S.C. § 284. Moreover, because Defendants' acts of patent infringement have been and are now willful and intentional, this case is exceptional and MEMS Innovations is thus also entitled to recover its attorneys' fees, as well as the costs of this action.

## V.     COUNT II: INFRINGEMENT OF '697 PATENT

44.     MEMS Innovations incorporates each of the allegations of paragraphs 1-43 above.

45.     Defendants have directly infringed and continue to directly infringe the '697 Patent by, for example, making, using, offering to sell, selling, and/or importing into the United States, without authority, products that practice one or more claims of the '697 Patent.

46.     Defendants are not licensed or otherwise authorized to make, use, offer for sale, sell or import any products that embody the inventions of the '697 Patent in the United States.

**COMPLAINT FOR PATENT INFRINGEMENT**

47. Defendants have and continue to directly infringe one or more claims of the '697 Patent, including, for example, claim 10 of the '697 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States infringing piezoelectric microspeakers and sensors without authority and in violation of 35 U.S.C. § 271.

48. With respect to the '697 Patent, Defendants' infringing products include, for example, the Chirp CH101 Ultrasonic Time-of-Flight (ToF) Sensor, the CH201 Ultrasonic ToF Sensor, the ICU-10201 High-Performance Ultrasonic Time-of-Flight Sensor, the ICU-20201 High-Performance Ultra-Compact Ultrasonic Time-of-Flight Sensor, the ICU-30201 High-Performance Ultrasonic Time-of-Flight Sensor, and the Ultrasonic Sensor Module USSM1.0 PLUS-FS ("TDK Ultrasonic Sensors"), and any other TDK ultrasonic sensors used in various applications that may or may not have TDK part numbers but are made by TDK with a similar structure as well as any TDK microspeakers which have similar structure and which may or may not be ultrasonic sensors, any TDK products that incorporate and/or include such TDK ultrasonic sensors and such TDK microspeakers (collectively, the "'697 Patent Infringing Products").

49. For example, the Chirp CH101 infringes representative claim 10 of the '697 Patent. On information and belief, the remaining '697 Patent Infringing Products infringe representative claim 10 of the '697 Patent in the same manner.

50. Claim 10 of the '697 Patent claims: a piezoelectric speaker comprising: a silicon substrate; an insulating layer provided over the silicon substrate; a piezoelectric plate provided over the insulating layer, the piezoelectric plate including a piezoelectric strain region and a vibration region; and a mating electrode provided in the piezoelectric strain region of the piezoelectric plate, wherein the piezoelectric plate is thinner in the vibration region than in the piezoelectric strain region.

51.    The CH101 includes a piezoelectric speaker.  A top view and exemplary scanning electron microscope (SCM) cross section of the CH101 sensor is shown below in Figure 4. The piezoelectric speaker includes a silicon substrate which is also shown in Figure 4.



***Figure 4***

52.    The CH101 also has an insulating layer, for example, a polysilicon membrane, provided over the silicon substrate.  This illustrative insulating layer is highlighted in purple and labeled as "polysilicon membrane 603" in Figure 5 below. Alternatively or additionally, an air gap in the setback (labeled 603a) under the polysilicon membrane 603 and/or a thin aluminum nitride layer under the bottom molybdenum electrode correspond to the claimed insulating layer.

**COMPLAINT FOR PATENT INFRINGEMENT**



**Figure 5**

53.    Additionally, the CH101 has a piezoelectric plate provided over the insulating layer, highlighted in orange below in Figure 6. The piezoelectric AlN (aluminum nitride) plate (605) is disposed over the insulating layer (for example, the polysilicon membrane 603). The piezoelectric plate (605) also includes a piezoelectric strain region and a vibration region having different relative thicknesses as also seen in Figure 6. There is also a mating electrode, labeled as top electrode in molybdenum in Figure 6, that is provided in the thicker piezoelectric strain region of the piezoelectric plate (605). Finally, piezoelectric plate (605) is thinner in the vibration region than it is in the piezoelectric strain region.

**COMPLAINT FOR PATENT INFRINGEMENT**



*Figure 6*

54.     Defendants have and continue to indirectly infringe one or more claims of the '697 Patent by knowingly and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States infringing products that incorporate and/or use the '697 Patent Infringing Products. Defendants induce direct infringement of the '697 Patent by customers, importers, sellers, resellers, and/or end users of the '697 Patent Infringing Products. On information and belief, the direct infringers include Defendants' customers that incorporate the Infringing Products into a product that they make, use, offer for sale, sell, or import into the United States. On information and belief, the direct infringers incorporate the Infringing Products into one or more products in the fields of augmented reality/virtual reality hardware, smart home appliances, IoT devices, mobile devices (for example, fingerprint scanners, proximity detection, and ranging measurements) and wearables, automobiles (for example, detection of presence of passengers, and collision detection), liquid level detection in industrial and consumer applications,

19

**COMPLAINT FOR PATENT INFRINGEMENT**

1  medical and health applications, object detection (for example, hand detection for

2  faucet control), robotics and drones, and in construction equipment.

3      55.    Defendants TDK Corporation of America and TDK Corporation had

4  actual knowledge of the '697 Patent and their infringement thereof since at least as

5  early as November 7, 2022, when they were provided written notice of that patent

6  and their infringement thereof.  Additionally, at the very least Defendants had actual

7  knowledge of the '697 Patent and their infringement of the same as of the date of a

8  prior Complaint filed on November 8, 2022, *MEMS Innovations, LLC v. TDK*

9  *Corporation et al,* Case No. 2:22-cv-00434-JRG.  Accordingly, at least as of

10  November 7, 2022, Defendants TDK Corporation of America and TDK Corporation

11  were on notice, knew and/or should have known that their actions as alleged herein

12  induced direct infringement of that patent by third parties. Defendants TDK

13  Corporation of America and TDK Corporation are therefore liable since at least as

14  early as November 7, 2022 for induced infringement by third party direct infringers

15  and should have known by at least that date that their actions as alleged herein

16  would induce actual infringement.

17      56.    Moreover, Defendant InvenSense, Inc. had actual knowledge of the

18  '697 Patent and their infringement thereof prior to the dismissal without prejudice of

19  the above lawsuit on or about May 1, 2023, prior to which Defendant InvenSense

20  were provided written notice of that patent and their infringement thereof.

21  Accordingly, prior to May 1, 2023, Defendant InvenSense, Inc. was on notice, knew

22  and/or should have known that their actions as alleged herein induced direct

23  infringement of that patent by third parties. Defendant InvenSense, Inc. is therefore

24  liable since prior to May 1, 2023 for induced infringement by third party direct

25  infringers and should have known by at least that date that their actions as alleged

26  herein would induce actual infringement.

27      57.    Defendants induced infringement by others with the intent to cause

28  infringing acts by others or, in the alternative, with the belief that there was a high

probability that others infringe the '697 Patent, but while at best, remaining willfully blind to the infringement.

58.    On information and belief, Defendants advertise the '697 Patent Infringing Products, publish specifications and promotional literature encouraging customers to implement and incorporate the '697 Patent Infringing Products into end user products, create and/or distribute user manuals for the '697 Patent Infringing Products that provide instructions and/or encourage infringing use, and offer support and/or technical assistances to their customers that provide instructions on and/or encourage infringing use.

59.    Defendants encourage and facilitate their customers to infringe the '697 Patent by promoting the '697 Patent Infringing Products, for example, stating on their website that "The sensor handles a variety of ultrasonic signal-processing functions and algorithms, enabling customers flexible industrial design options for a broad range of use-case scenarios."[17]

60.    Defendants' customers that incorporate the '697 Patent Infringing Products into other products (*e.g.*, smartphones, vehicles, etc.) as well as the end users of those products, each directly infringe the Asserted Patents pursuant to Defendants' instructions and advertisements.

61.    Defendants also have contributorily infringed the '697 patent by selling or offering to sell the '697 Patent Infringing Products to Defendants' customers and other end users, who then incorporate the '697 Patent Infringing Products into other products (*e.g.*, smartphones, vehicles, etc.) in a manner that directly infringes one or more claims of the '697 Patent.  Defendants sold or offered to sell the '697 Patent Infringing Products to Defendants' customers and other end users despite knowing (a) that the '697 Patent Infringing Products are material to the inventions described

---

[17] https://invensense.tdk.com/products/ch101/;
https://invensense.tdk.com/products/ch201/ (last visited Aug. 18, 2025).

and claimed in the '697 Patent, (b) that the '697 Patent Infringing Products have no substantial non-infringing use, and (c) that the '697 Patent Infringing Products are specially made for and in fact do infringe one or more claims of the '697 Patent.

62.     Defendants' direct and indirect infringement of the '697 Patent is willful.

63.     On information and belief, Defendants engaged in this conduct with knowledge of the '697 Patent's existence and with knowledge that the Infringing Products infringed it, and that their customers' use of the Infringing Products constituted direct infringement.

62.     Defendants' actions in this case warrant the imposition of enhanced damages under 35 U.S.C. § 284. Moreover, because Defendants' acts of patent infringement have been and are now willful and intentional, this case is exceptional and MEMS Innovations is thus also entitled to recover its attorneys' fees, as well as the costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, MEMS Innovations requests entry of judgment in its favor and against Defendants as follows:

a)     A declaration that Defendants have directly infringed one or more claims of the Asserted Patents, either literally or under the doctrine of equivalents;

b)     A declaration that Defendants have induced infringement of and/or are contributorily infringing of one or more claims of the Asserted Patents, either literally or under the doctrine of equivalents;

c)     An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate MEMS Innovations for Defendants' infringement of the Asserted Patents in an amount according to proof at trial (together with prejudgment and post-judgment interest), but no less than a reasonable

royalty;

d)  An award of attorney's fees, costs and expenses pursuant to 35 U.S.C. § 284 or as otherwise permitted by law;

e)  An award of enhanced damages pursuant to 35 U.S.C. § 284; and

f)  Such other and further relief, whether legal, equitable, or otherwise, to which MEMS Innovations may be entitled or which this Court may order.

Dated:  October 6, 2025           **ONE LLP**

By:  */s/ Nathaniel L. Dilger*
          Nathaniel L. Dilger

*Attorneys for Plaintiff,*
*MEMS Innovations, LLC*

**COMPLAINT FOR PATENT INFRINGEMENT**

1

## **JURY DEMAND**

MEMS Innovations hereby demands a trial by jury on all issues so triable.

Dated:  October 6, 2025                **ONE LLP**

By: *_/s/ Nathaniel L. Dilger_*
        Nathaniel L. Dilger

*Attorneys for Plaintiff,*
*MEMS Innovations, LLC*

**COMPLAINT FOR PATENT INFRINGEMENT**